UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| JACK BUNKER & CHERYL BUNKER,<br><br>Plaintiffs,<br><br>vs.<br><br>CIGNA HEALTH MANAGEMENT, INC.,<br>SKYLINE HEALTHCARE, LLC, and<br>ARLINGTON CARE AND<br>REHABILITATION CENTER, LLC,<br><br>Defendants. | **4:19-CV-04128-LLP**<br><br><br>**MEMORANDUM OPINION AND ORDER<br>DENYING MOTION TO DISMISS,<br>GRANTING MOTION TO STRIKE JURY<br>DEMAND, AND DENYING MOTION TO<br>SERVE BY PUBLICATION** |

Pending before the Court are Cigna's motion to dismiss Plaintiffs' claim for breach of fiduciary duty and motion to strike jury demand.  Doc. 11.  Also pending before the Court is Plaintiffs' motion to serve defendant Skyline by publication.  Doc. 21.  For the foregoing reasons, Cigna's motion to dismiss is denied and Plaintiffs' motion to serve by publication is denied.

## FACTS

The facts, as alleged in the Complaint will be accepted as true for purposes of this Motion to Dismiss.  Cheryl Bunker was employed by Arlington Care and Rehabilitation Center ("Arlington Care") for 17 years.  Doc. 1, ¶ 8.  It is alleged that upon information and belief, Skyline Healthcare, LLC ("Skyline") purchased Arlington Care on or before January 1, 2017.  Doc. 1, ¶ 9.  Beginning on or about January 1, 2017, Skyline offered medical insurance to employees of Arlington Care through Skyline's Healthcare Medical Plan ("the Plan").  Doc. 1, ¶ 10.  This was a self-insured health plan and was funded by both employee contributions and Skyline Healthcare.  Doc. 1, ¶¶ 11; 12-1.  Skyline began failing to pay claims as early as September 2017 and stopped funding the plan to cover claims prior to December 2017.  Doc. 1, ¶¶ 12, 13.

In the present case, it appears that Skyline is designated in the Plan as the Plan Administrator.  Doc. 12-1 at 45.  Under the terms of the Plan, Skyline, as Plan Administrator, has "maximum legal discretionary authority to construe and interpret the terms and provisions of the Plan, to make determinations regarding issues which relate to eligibility for benefits, and to decide disputes which may arise relative to a Plan Participant's rights, and to decide questions of Plan

interpretation and those of fact relating to the Plan." Doc. 12-1 at 42. The Plan's terms further provide that benefits are subject to exclusions and limitations "including, but not limited to, the Plan Administrator's determination that: care and treatment is Medically Necessary; that charges are Usual and Reasonable; the services, supplies and care are not Experimental and/or Investigational." Doc. 12-1 at 2. "Medically Necessary care and treatment is recommended or approved by a Physician; is consistent with the patient's conditions or accepted standards of good medical practice; is medically proven to be effective treatment of the condition; is not performed mainly for the convenience of the patient or provider of medical services; is not conducted for research purposes; and is the most appropriate level of services which can be safely provided to the patient." Doc. 12-1 at 16. The Plan provides that the "Plan Administrator has the discretionary authority to decide whether care or treatment is Medically Necessary." Doc. 12-1 at 16.

Although Skyline is the designated Plan Administrator, the terms of the Plan provide that "administration is provided through a Third-Party Claims Administrator." Doc. 12-1 at 45. The "Third Party Claims Administrator" is not defined under the terms of the Plan. The Complaint alleges that upon information and belief, Cigna was the Claims Administrator for the plan. Doc. 1, ¶ 14. The Plan's designated Claims Administrator appears to be American Plan Administrators, LLC. Doc. 12-1 at 45.

The Plan provided that Mr. Bunker was required to obtain precertification of Medical Necessity for his surgery through the utilization review program. Doc. 12-1 at 10. The Plan provides that "[t]he purpose of the [utilization review program] is to determine what charges may be eligible for payment by the Plan. . . . If a particular course of treatment or medical service is not certified, it means that either the Plan will not pay for the charges or the Plan will not consider that course of treatment as appropriate for maximum reimbursement under the Plan." Doc. 12-1 at 10. The Plan provides that before a beneficiary "enters a Medical Care Facility on a non-emergency basis or receives other listed medical services, the utilization review administrator will, in conjunction with the attending Physician, certify the care as appropriate for Plan reimbursement." Doc. 12-1 at 10.

Cheryl Bunker's husband, Jack Bunker, was insured under Skyline's health Plan. Doc. 1, ¶ 15. Mr. Bunker was diagnosed in 2017 with cancer and underwent surgery on or about December 15, 2017. Doc. 1, ¶ 16. By letter dated December 1, 2017, Mr. Bunker received notice from Cigna

Health Management, Inc. ("Cigna"), a "licensed utilization review agency [that] performs the medical management functions for [the Plan]," that "we have authorized a request for medical necessity received on [November 30, 2017]."  Doc. 1-1.  The letter further provided that:

1. When we receive your medical claim(s), we will need to make sure your health care professionals performed only services we approved.  If extra services were performed that were not medically necessary, Cigna or your health plan may not pay for them.  This means you will have to pay the total cost for any extra services.
2. This letter is not a guarantee that your plan will pay for the services.  You must be enrolled in the plan and eligible for benefits on the date you received the service.  Please see your plan documents for details about your coverage.  You are responsible for your share of any copayments, coinsurance, or other costs.

Doc. 1-1.

In reliance upon the approval letter from Cigna, and without notice that Skyline had stopped funding the Plan, Mr. Bunker underwent the approved surgery on December 15, 2017. Doc. 1, ¶ 31.  Had they been informed that their claims may not be paid, Plaintiffs allege that they would have sought other insurance coverages prior to the date of the surgery.  Doc. 1, ¶ 32. Plaintiffs' medical bills totaling at least $73,266.04 incurred between September 2017 and April 30, 2018, including, but not limited to, payment for the December 15, 2017, surgery remain unpaid. Doc. 1, ¶¶ 19, 22.

On July 22, 2019, Plaintiffs filed a Complaint with jury demand against Cigna, Skyline, and Arlington Care for breach of ERISA fiduciary duty.  Doc. 1.

## STANDARD OF REVIEW

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (internal quotations omitted).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555 (internal citations omitted).  The complaint must allege facts, which, when taken as true, raise more than a speculative right to relief.  *Id.;*

*Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing Fed. R. Civ. P. 8(a)(2)). "Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id. (citation omitted).*

When considering a motion to dismiss under Rule 12(b)(6), the court generally must ignore materials outside the pleadings, but it may consider "'some materials that are part of the public record or do not contradict the complaint,' as well as materials that are 'necessarily embraced by the pleadings.'" *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (citations omitted). In general, material embraced by the complaint include "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings." *Ashanti v. City of Golden Valley,* 666 F.3d 1148, 1151 (8th Cir. 2012).

## DISCUSSION

Pending before the Court are Cigna's motion to dismiss Plaintiffs' claim for breach of fiduciary duty and motion to strike jury demand. Also pending before the Court is Plaintiffs' motion to serve defendant Skyline by publication.

## I.      Motion to Dismiss – Breach of Fiduciary Duty

In the present case, Plaintiff alleges that Cigna worked with Skyline to administer its benefits plans and in doing so, was in a fiduciary relationship with Plaintiffs and was thus required to exercise the fiduciary duties of care, skill, prudence, and diligence. Plaintiffs allege that Cigna breached its fiduciary duties because it knew or should have known that Skyline was not paying any health insurance benefits and had a fiduciary duty not to mislead Plaintiffs that their claims would be paid if they were enrolled in the Plan and eligible for benefits on the date Mr. Bunkers received medical services. Plaintiffs allege that had Cigna not breached its fiduciary duties, they would have sought other insurance coverage prior to the date of the surgery. Plaintiffs' medical bills for the surgery remain unpaid. Plaintiffs allege that they seek the equitable remedy of surcharge to redress Cigna's alleged breaches of fiduciary duty.

A claim for breach of fiduciary duty under ERISA requires the plaintiff to prove: (1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff. *Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 639 (7th Cir. 2007).

## A. Fiduciary and Breach of Fiduciary Duty

"[A] 'person is a fiduciary with respect to a plan,' and therefore subject to ERISA fiduciary duties, 'to the extent' that he or she 'exercises any discretionary authority or discretionary control respecting management' of the plan, or 'has any discretionary authority or discretionary responsibility in the administration' of the plan." *Varity Corp. v. Howe*, 516 U.S. 489, 498 (1996) (quoting 29 U.S.C. § 1002(21)(A)). To decide whether Cigna's actions fall within the statutory definition of "fiduciary" acts, the court must interpret the statutory terms which limit the scope of fiduciary activity to discretionary acts of plan "management" and "administration." *See id.* at 502. The ordinary trust law understanding of fiduciary "administration" of a trust is that to act as an administrator is to perform the duties imposed, or exercise the powers conferred, by the trust documents. *Id.* The law of trusts also understands a trust document to implicitly confer "such powers as are necessary or appropriate for the carrying out of the purposes" of the trust. *Id.*

"Persons who provide professional services to plan administrators 'are not ERISA fiduciaries unless they "transcend the normal role'" and exercise discretionary authority.'" *Kerns v. Benefit Trust Life Ins. Co.*, 992 F.2d 214, 271-18 (8th Cir. 1993). The Department of Labor, which enforces and interprets ERISA,[1] issued guidance stating that persons "who perform purely ministerial functions for an employee benefit plan within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary because such person does not have discretionary authority or discretionary control respecting management of the plan." 29 C.F.R. § 2509.75-8 D-2; *see also Kerns*, 992 F.2d at 218 (citing 29 C.F.R. § 2509.75-8 D-2). Ministerial functions cited to by the Department of Labor in its regulations includes: 1) application of rules determining eligibility for participation or benefits; (2) calculation of services and compensation credits for benefits; (3) preparation of employee communications material; (4) maintenance of participants' service and employment records; (5) preparation of reports required by government agencies; (6) calculation of benefits; (7) orientation of new participants and

---

[1] *Hughes v. 3M Retiree Medical Plan*, 281 F.3d 786, 792 (8th Cir. 2002).

advising participants of their rights and options under the plan; (8) collection of contributions and application of contributions as provided in the plan; (9) preparation of reports concerning participants' benefits; (10) processing of claims; and (11) making recommendations to others for decisions with respect to plan administration.  29 C.F.R. § 2509.75-8, D-2.

Fiduciary status is not an "all or nothing concept."  *Johnston v. Paul Revere Life Ins. Co.*, 241 F.3d 623, 632 (8th Cir. 2001) (citation omitted).  "To adequately assert clams of breach of fiduciary duty, plaintiffs must allege that defendants were fiduciaries acting in a fiduciary capacity."  *In re Excel, Inc., Securities, Derivative & "ERISA" Litigation*, 312 F.Supp.2d 1165, 1180 (D. Minn. 2004); *see also Varity*, 516 U.S. at 527 (stating that a person is a fiduciary with respect to a plan and therefore subject to ERISA fiduciary duties to the extent that he or she exercises any discretionary authority or discretionary responsibility in the administration of such plan.).  Cigna argues that it did not have a fiduciary duty to provide Plan members with notifications about circumstances that affect the availability of benefits for all Plan members, such as Skyline's funding of the Plan, as such responsibility belongs to Skyline, the designated Plan Administrator.  Doc. 12 at 7.  Cigna states that as Plan Administrator, Skyline is subject to detailed disclosure requirements concerning the management of the Plan, its financial condition, and changes to is terms.  Doc. 12 at 8 (citing 29 U.S.C. § 1021(a); 29 C.F.R. Part 2520, Subpart F).  Specifically, Cigna states that, among other things, plan administrators are required to provide participants certain statements from each annual report that it is required to file with the Department of Labor and to furnish the latest annual report to plan members upon request.  Doc. 12 at 8 (citing 29 U.S.C. § 1024(b)(4)).  Cigna argues that because it had no fiduciary duty to provide member notifications regarding Plan funding, such conduct cannot form the basis of a claim alleging a breach of fiduciary duty.  Doc. 16 at 5.

In support of its argument that Cigna does not have a fiduciary duty to communicate directly with participants and beneficiaries about circumstances that affect the availability of benefits for all Plan members, Cigna cites to *Kerns v. Benefit Trust Life Ins. Co.*, 992 F.2d 214 (8th Cir. 1993) and *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54 (4th Cir. 1992), which was cited favorably by the Eighth Circuit Court of Appeals in *Kerns*.

In *Kerns*, after her husband's death by suicide, a spouse filed a claim for accidental death benefits with the defendant life insurance company under the group life insurance policy issued to

6

her husband's employer.  992 F.2d at 215.  The claim was denied because the policy had lapsed for nonpayment of premiums.  *Id.*  The claimant filed a lawsuit against the insurance company alleging that failure to inform her of the lapse and of an offer of reinstatement by the insurance company so that she could pay past-due premiums and preserve coverage for her claim was a breach of fiduciary duty.  *Id.*  The Eighth Circuit Court of Appeals affirmed the district court's decision granting summary judgment in favor of the insurer.  The court stated that "[a]lthough insurers have long had an obligation under state law to process claims fairly, they have not traditionally stood in a fiduciary relationship with claimants and beneficiaries.  An insurer has a contractual obligation to pay valid claims, but neither state law nor common sense suggests that the insurer performs its claims function 'for the exclusive purpose of providing benefits.'"  *Id.* at 216.  The court noted, however, that neither the plan nor the insurance policy created fiduciary obligations for the insurer, such as the role of plan administrator or as a reviewer of denied claims. *Id.*

The court in *Kerns* concluded that the insurer was *not* acting in a fiduciary capacity when it denied the claimant's claim for accidental death benefits on the basis that the policy had terminated, but was simply performing its normal contractual claims handling function under the plan.  *Id.* at 216-17.  The court stated that even if the insurer was a fiduciary with respect to claims handling, fiduciary status was not "an all-or-nothing concept" and that the insurer was not a fiduciary with respect to the functions at issue in this case—participant and beneficiary notification, premium payment, and policy lapse and reinstatement.  *Id.* at 217 (citing *Coleman*, 969 F.2d at 61).  Such disclosure requirements are imposed on plan administrators which the court noted was the employer.  *Id.*  The court noted further that nothing in the insurer's policy documents imposed any obligation to communicate directly with the employer's participants and beneficiaries regarding premiums, policy lapses, and reinstatement and that there was no evidence that the insurer had undertaken to perform such functions which ERISA has imposed on the employer as plan administrator.  *Id.*  Even if the insurer was exercising its discretion with regard to offering the policy reinstatement, the court found that it was acting not as an ERISA fiduciary, but "as an insurance vendor making a business decision to retain a slow-paying customer."  *Id.*  Additionally, the court stated that proving the offer of reinstatement was a discretionary act of an ERISA fiduciary would not impose on the insurer a separate duty of deciding whether to notify participants and beneficiaries of the offer because such function belonged to the plan administrator.  *Id.* at 217.

The Eight Circuit Court of Appeals stated that the district court had found that no case had yet imposed upon any ERISA fiduciary the duty to advise a non-employee claimant of the employer's failure to fund a plan, but stated that it was not addressing that issue. *Id.* at 217 n.3.

In *Coleman*, which was cited favorably by the Eighth Circuit Court of Appeals in *Kerns*, the plaintiff and her husband participated in a group health insurance plan sponsored by her husband's employer. 969 F.2d at 55. The employer had stopped paying premium payments on the policy on November 1, 1988. *Id.* at 56. On December 5, 1988, the plaintiff was sent an authorization for a two-day hospital stay for her child's birth. *Id.* at 56-57. The authorization letter specifically provided that authorization of admission did "not guarantee payment" and that payment was also "subject to eligibility and coverage at the time services [were] rendered and must be verified by the employer or insurance carrier." *Id.* at 57. Plaintiff alleged that the insurer breached its fiduciary duty by failing to notify all plan beneficiaries that its employer had stopped paying premiums. *Id.* The Fourth Circuit Court of Appeals disagreed, concluding that the insurer was not an ERISA fiduciary regarding such activities because it had no authority under the terms of the plan to provide notification of major changes or events, nor did the insurer voluntarily assume such functions. *Id.* at 61.

In response to Cigna's arguments, Plaintiffs argue that they do not allege that Cigna had a duty to notify all plan participants that Skyline had stopped funding the Plan or paying benefits. Doc. 15 at 5. Instead, Plaintiffs argue that they allege that to the extent Cigna was exercising discretionary authority over the approval or denial of Mr. Bunker's claims for medical benefits in the precertification approval letter, "Cigna had a fiduciary duty not to mislead or withhold such information from [the Plaintiffs] who would be making determinations about undergoing medical services based upon the approval or denial of such services." Doc. 15 at 5.

"ERISA and its associated regulations impose upon fiduciaries extensive and specific obligations of disclosure." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009). Cigna argues that ERISA does not impose upon it the fiduciary duty to provide specific disclosures to plan participants regarding the plan. However, the disclosure obligations imposed by ERISA and its associated regulations "are [also] supplemented by the general duty of loyalty under 29 U.S.C. § 1104(a)(1)." *Id.* In *Kalda v. Sioux Valley Physician Partners, Inc.*, the Eighth Circuit provided what the fiduciary duty of loyalty encompasses:

> An ERISA fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries," and must comply with the common-law duty of loyalty, including the "obligation to deal fairly and honestly with all plan members." Accordingly, a fiduciary may "'not affirmatively miscommunicate or mislead plan participants about material matters regarding their ERISA plan'" when discussing a plan. A statement is materially misleading if there is "a substantial likelihood that it would mislead a reasonable employee in the process of making an adequately informed decision regarding . . . benefits to which she might be entitled." Additionally, a fiduciary has a duty to inform when it knows that silence may be harmful, and cannot remain silent if it knows or should know that the beneficiary is laboring under a material misunderstanding of plan benefits. The duty of loyalty requires a fiduciary to disclose any material information that could adversely affect a participant's interests.

481 F.3d 639, 644 (8th Cir. 2007). If Cigna was acting in a fiduciary capacity when it preauthorized Mr. Bunker's surgery, then it was thus bound by the duty of loyalty to Plaintiffs. Plaintiffs allege that Cigna's precertification letter was misleading because a reasonable employee could read it to mean that payment for the approved medical treatment was guaranteed as long as Mr. Bunker was "enrolled in the plan and eligible for benefits on the date [he] received services." Doc. 1-1. Plaintiffs also argue that the preauthorization letter was misleading because it could have led a reasonable person to believe that Cigna was one of the payors of the Plan.[2] Doc. 15 at 7. Plaintiffs allege that Cigna knew or should have known that Skyline had stopped funding that plan and paying benefits and that Cigna had a duty not to mislead Plaintiffs regarding payment for benefits.

The fact that Cigna had no specific duty to disclose the financial condition of the Plan is not fatal to Plaintiffs' claims. In *Braden v. Wal-Mart Stores, Inc.*, an employee of Wal-Mart and participant in its employee retirement plan brought a class action lawsuit against his employer and various executives involved in the management of the Plan. 588 F.3d 585 (8th Cir. 2009). The plaintiff alleged that the defendants breached their duty of loyalty by failing to disclose to participants complete and accurate material information about the Plan funds and the process by which they were selected. *Id.* at 598. The plaintiff alleged that the process by which the mutual funds were selected was tainted by defendants' failure to consider the trustee's interest in including funds that shared their fees with the trustee. *Id.* at 590. The result of these failures, plaintiff

---

[2] Cigna's preauthorization letter stated that "[i]f extra services were performed, Cigna or your health plan may not pay for them." Doc. 1-1.

alleged, is that some or all of the investment options included in the Plan offered only retail class shares to participants which charged excessive fees.[3]  *Id.* at 595.  The complaint also alleged that the mutual fund companies whose funds were included in the Plan shared with the trustee portions of the fees they collected from participants' investments, and that the size of such fees was not reasonable compensation for the services rendered by the trustee, but amounted to kickbacks in exchange for inclusion of their funds in the Plan.  *Id.* at 590.

In *Braden*, the district court dismissed the plaintiff's claims, concluding that ERISA did not require disclosure of revenue sharing arrangements and that the other fee-related information that the plaintiff sought was not material.  *Id.* at 599.

The Eighth Circuit Court of Appeals in *Braden* reversed the district court's decision dismissing the plaintiff's fiduciary duty claim.  *Id.* at 598.  The court acknowledged that it is not "quick to infer specific duties of disclosure under [the generally duty of loyalty imposed by 29 U.S.C. § 1104(a)(1)] because of the extent of [ERISA's] statutory and regulatory scheme."  *Id.* However, the court concluded that a reasonable trier of fact could find that defendants' alleged failure to disclose to participants that Plan funds charged higher fees than comparable funds, that Wal-Mart had access to more cost effective institutional shares, that defendants did not select or evaluate the funds on the basis of the fees they charged, would mislead a reasonable participant in the process of making investment decisions under the Plan.  *Id.* at 599.  The court stated that participants might conclude in light of this information that Plan funds were not selected using appropriate criteria and might therefore direct their investments towards other options.  *Id.* Although the court noted that there may be no "per se duty to disclose [revenue sharing payments]," the court stated that ERISA's duty of loyalty "may require a fiduciary to disclose latent conflicts of interest which affect participants' ability to make informed decisions about their benefits."  *Id.* at 600 (citing *Shea v. Esensten*, 107 F.3d 625, 629 (8th Cir. 1997)).  The court

---

[3] With respect to the plaintiff's claims regarding failure to disclose information regarding fees, the plaintiff alleged that: (1) the funds charged higher fees than readily available alternatives designed to track the same market indices; (2) the funds underperformed readily available and more cost effective alternatives; (3) all of the fees were paid from Plan assets and they consequently depleted participants' retirement savings; (4) all of the Plan funds offered retail shares despite the fact that Wal-Mart had access to institutional shares; (5) the 12b-1 fees charged by several of the funds did not benefit participants, and comparable alternatives charged no such fees; and (6) [defendants] did not select the Plan funds or continually evaluate them based on the reasonableness of the fees they charged. *Braden*, 588 F.3d at 598-99.

concluded that "materiality is a fact and context sensitive inquiry," and that the plaintiff's nondisclosure claims could not be decided as a matter of law. *Id.*

As in *Braden*, although Cigna may not have a duty to disclose the financial condition of the plan to all participants, if acting in a fiduciary capacity, it may have a duty to disclose such information if failure to do so "would mislead a reasonable [participant] in the process of making an adequately informed decision" about their benefits. *Id.* (stating that duty of loyalty may require a fiduciary to disclose latent conflicts of interest which affect participants' ability to make informed decisions about their benefits and may require a fiduciary to disclose fees charged by the Plan funds and amounts of revenue sharing payments if failure to do so would "mislead a reasonable participant in the process of making an adequately informed decision regarding allocation of investments in the Plan.")

The Court acknowledges that not all preauthorization or precertification decisions such as the "medical necessity" determination made by Cigna, are coverage decisions. *Smith v. Med. Benefit Admins. Group, Inc.*, 639 F.3d 277, 285 (7th Cir. 2011). "[P]reauthorization or precertification may signal nothing more than the insurer's conclusion that the intended medical treatment is necessary and appropriate for the insured's condition, without speaking to the separate question of whether the intended treatment is covered by the terms of the insurance plan." *Id.* Preauthorization notices often contain disclaimers warning the insured and his physician that preauthorization or precertification does not constitute the insurer's agreement to pay for the treatment. *Id.*

Courts have held that fiduciaries may be liable for breaching their fiduciary duty of loyalty for issuing preauthorization or precertification decisions approving medical treatment when it misled the participant as to benefits. In *Smith v. Medical Benefit Administrators Group, Inc.*, the terms of the plan obligated the insured to notify Auxiant, the plan's third-party administrator, and to obtain preauthorization for certain medical services, including any (non-emergency) surgery. 639 F.3d 277, 279 (7th Cir. 2011). Although Auxiant preauthorized the insured for a gastric bypass surgery, a couple of months later, Auxiant denied payment of the claims resulting from the insured's surgery and hospitalization, citing an exclusion in the health plan for surgery and other medical services related to obesity. *Id.* In his lawsuit, the insured claimed that Auxiant breached

11

its breached its fiduciary obligations to the insured when it preauthorized his gastric bypass surgery without considering whether the treatment was covered by the insurance policy. *Id.*

The Seventh Circuit Court of Appeals reversed the district court's decision dismissing the plaintiff's breach of fiduciary duty claim, finding that his complaint "plausibly allege[d] that Auxiant breached its fiduciary obligations to him." *Id.* at 281. The court concluded that "[a]s a claims administrator with the power to grant or deny a participant's claim for health insurance benefits, Auxiant is an ERISA fiduciary." *Id.* The court stated that:

> As such, Auxiant is obliged to carry out its duties solely in the interest of the insurance plan's participants and beneficiaries and with the exclusive purpose of providing them with benefits, while employing "the care, skill, prudence, and diligence" of a knowledgeable and prudent individual acting in the same capacity." Auxiant "thus owe[d] the participants in [the] plan and their beneficiaries a duty of loyalty like that borne by a trustee under common law, and it must exercise reasonable care in executing that duty." This duty of loyalty encompasses a negative obligation not to mislead the insured, as well as a positive obligation to communicate material information to the insured in circumstances where the fiduciary's silence might itself lead the insured to misapprehend his rights and obligations.

*Id.* (internal citations omitted). The court held that accepting the allegations of the insured's complaint as true, "one can see how Auxiant's preauthorization practices might constitute a breach of this duty. By preauthorizing a medical treatment without first ascertaining whether that treatment is covered by the insurance plan, and indeed without warning the insured that coverage might be denied notwithstanding the preauthorization, Auxiant could be thought to be misleading the insured to his detriment." *Id.*

After remand, the parties in *Smith* engaged in discovery and filed motions for summary judgment. *Smith v. Med. Benefits Admins. Group, Inc.*, 869 F.Supp.2d 990 (E.D. Wis. 2012). The court granted summary judgment in favor of Auxiant and denied the insured's motion for summary judgment. *Id.* at 992. In doing so, the court concluded that under the undisputed facts of the case, it was unreasonable to infer that the insured was misled that precertification guaranteed coverage. The court noted that the plan clearly stated that "precertification approval did not verify eligibility for benefits nor guarantee benefit payments" and that the insured's insurance card stated that preauthorization did not guarantee benefits. *Id.* at 996-97. Following the Seventh Circuit's guidance, the court also examined what the insured was told when he received preauthorization

from Auxiant to undergo medical treatment and noted that the notice he received warned him that preauthorization was "not a guarantee of payment" and that "[b]enefits [were] subject to all eligibility, plan provisions and limitations in force at the time services are rendered." *Id.* at 997. The notice further instructed the insured to contact his benefit plan administrator, Auxiant, for benefit and eligibility information." *Id.* The court concluded that given the "clarity of the plan language and the explicit disclaimers that accompanied the request for preauthorization, Auxiant's failure to provide a binding pre-service benefits determination [did] not constitute a fiduciary breach." *Id.*

In *King v. Blue Cross and Blue Shield of Illinois*, 871 F.3d 730 (9th Cir. 2017), a plaintiff brought a breach of fiduciary duty claim under ERISA against Blue Cross Blue Shield. The plan in *King* granted UPS as plan administrator "the exclusive right and discretion to interpret the terms and conditions of the [p]lan, and to decide all matters arising in its administration and operation, including questions of fact and issues pertaining to eligibility for, and the amount of, benefits to be paid by the [p]lan[ ]." *Id.* at 736. The plan authorized UPS to delegate its administrative duties to outside administrative service providers and Blue Cross was one of those providers delegated by UPS to administer medical coverage for plan participants. *Id.* The plaintiff had suffered an infection that was going to require surgery and contacted Blue Cross to obtain precertification for treatment. *Id.* The summary plan description described "precertification" as a process to ensure that hospital stays and other specified treatment and services were "medically necessary and appropriate." *Id.* Plan participants and their treating physicians were notified by mail of the certification decision and participants were charged a $250 fee for failure to precertify. *Id.* However, the summary plan description did not warn that the plan or claims administrator may still deny benefits claims for other reasons even if a plan participant obtained precertification. *Id.*

The plaintiff in *King* received a series of letters from Blue Cross approving medical care at several hospitals and other facilities stating that were "in response to a request for service(s)/procedures(s)," and certifying specific treatment as "medically necessary." *Id.* at 737. All of the letters contained the following qualification:

> Approval through the Health Care Management Department is not a guarantee of payment of benefits. Payment of benefits is subject to several factors, including, but not limited to, eligibility at the time of service, payment of premiums/contributions, amounts allowable for services, supporting medical

> documentation and other terms, conditions, limitations and exclusions set forth in your . . . Summary Plan Description . . . .  For questions regarding benefits, please contact the Customer Service unit at the telephone number listed on the back of your health insurance card.  You remain responsibile for any out-of-pocket requirements, including, but not limited to, coinsurance, copayments, deductibles and/or non-covered charges.

*Id.*  Blue Cross subsequently sent the plaintiff an explanation of benefits stating that only a certain portion of her medical bills was covered by the plan because she had reached the lifetime maximum benefit.  *Id.*  The plaintiff sent a letter to the Blue Cross Claims Review Section stating that the explanation of benefits was the first written notice she received that her health insurance would not cover all her medical bills and asked Blue Cross to reconsider.  *Id.* at 738.  The plaintiff's request was denied and she was denied medical coverage for her bills over the lifetime benefit maximum.  *Id.*

The insured in *King* filed suit against Blue Cross under sections 502(a)(1)(B) and 502(a)(3) of ERISA.  *Id.* at 737-38.  In her complaint, the insured alleged, in part, that Blue Cross breached its fiduciary duties in violation of ERISA.  *Id.* at 738.  The district court dismissed the insured's breach of fiduciary duty claim on summary judgment.  *Id.*

When the case was on appeal, Blue Cross argued in a motion for summary judgment that it was not an ERISA fiduciary and had made no misrepresentations because "all the information it provided to [the plaintiff] was correct and accurate."  *Id.* at 745-46.  The Ninth Circuit Court of Appeals disagreed on both counts.  The court concluded that Blue Cross was a fiduciary and reasoned as follows:

> Blue Cross processes and pays claims to plan participants and conducts the first-level appeal for benefits denials.  Although the CRC conducts the second-level appeal, Blue Cross makes initial benefit determinations for all plan participants and makes final determinations for those participants who do not appeal their claims to the CRC.  This requires that Blue Cross interpret the Retiree Plan to determine whether to pay claims and whether to uphold benefit denials on appeal.  In short, Blue Cross has the authority to grant, deny, *and* review denied claims.  Any one of these abilities would be sufficient to confer fiduciary status under ERISA.

*Id.* at 746.  The court noted that "[a] fiduciary has an obligation to convey complete and accurate information material to the beneficiary's circumstances, even when a beneficiary has not specifically asked for the information [and that] [f]iduciaries breach their duties if they mislead

plan participants or misrepresent the terms or administration of a plan." *Id.* at 744 (citation omitted). The court also concluded that there was a genuine dispute of material fact about whether Blue Cross misled the plaintiff. *Id.* at 746-47. The court stated that although the approval letters all contained a disclaimer that they were "not a guarantee of payment of benefits," they did not mention the lifetime benefit maximum. *Id.* at 746. The letters stated that payment was subject to any limitations in the summary plan description, but the court had found that the summary of modifications to the summary plan description was ambiguous with respect to whether the lifetime benefit maximum applied to the retiree plan. *Id.* The court rejected Blue Cross's argument that the representatives did not falsely represent that the plaintiff was $10,000 away from the lifetime limit at the end of January because they would only have information concerning claims that had been submitted and adjudicated in the ordinary course of business at the time of the call. The court reasoned that Blue Cross did not cite to any evidence in the record with respect to what claims had been received or adjudicated at that point in time. *Id.* at 746. The court noted that the explanation of benefits Blue Cross sent to the plaintiff on February 19, 2013, stated that her benefit claims from November 2012 were denied because she had exceeded the lifetime maximum while the March 14, 2013, letter Blue Cross sent to the plaintiff stated that she reached the limit on January 1, 2013. *Id.* The court concluded that a reasonable juror could conclude that Blue Cross made misrepresentations to the plaintiff about the lifetime benefit maximum. *Id.* at 746-47.

Cigna argues that Plaintiffs' assertion that Cigna made eligibility determinations for the Plan is contradicted by the Plan document which Cigna attached as an exhibit to its motion to dismiss and which grants Skyline, as the Plan Administrator, discretion and responsibility to "make determinations regarding issues which relate to eligibility for benefits and to decide questions of Plan interpretation." Even if the Court was to consider the Plan document on this motion to dismiss, the Court notes that the Plan's terms also provide that Skyline, as Plan Administrator, has the discretionary authority to decide whether a treatment is Medically Necessary. Yet, it appears from Cigna's preauthorization letter, that Skyline had delegated this discretionary authority by Cigna. *See Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 438 (6th Cir. 2006) (stating that an ERISA "fiduciary" not only includes persons specifically named as fiduciaries by the benefit plan, but also anyone else who exercises discretionary control or authority over a plan's management, administration, or assets."). Additionally, the summary plan description provided by Cigna stated

that administration of the Plan is provided through a "Third Party Claims Administrator," although such term was undefined in the Plan.

Plaintiffs allege that Cigna was acting as a fiduciary when it preauthorized Mr. Bunker's surgery based on medical necessity. While it is unclear as to the extent of discretionary authority that Cigna had over benefits determinations, because the factual assertions in the complaint must be taken as true and afforded every reasonable inference, Cigna's motion to dismiss on the basis that Cigna was not acting in a fiduciary capacity is denied. Furthermore, like other courts, this Court finds that it would be "'premature to determine a defendant's fiduciary status at the motion to dismiss stage of the proceedings,' because a determination of fiduciary status based on function is a 'mixed question of law and fact." *In re Xcel Energy, Inc. Securities, Derivative & "ERISA" Litigation*, 312 F.Supp.2d 1165, 1181 (D. Minn. 2004) (quoting *In re Elec. Data Sys. Corp. ERISA Litig.*, 305 F.Supp.2d 658, 665 (E.D. Tex. 2004)).

Cigna also argues that its preauthorization letter is not misleading as to coverage. Doc. 16 at 6. Cigna argues that like the preauthorization in the *Coleman* case, its preauthorization letter provided that it was not a guarantee that the Plan will pay for services; that one must be enrolled in the plan and eligible for benefits on the date of service. In neither *Kerns* nor *Coleman* did the courts discuss the fiduciary duty of loyalty. Whether or not Cigna had a duty to disclose the financial condition of the Plan (i.e. whether such information is "material") depends on whether "there is a substantial likelihood that nondisclosure 'would mislead a reasonable employee in the process of making an adequately informed decision regarding benefits. . . .'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 599 (8th Cir. 2009) (quoting *Kalda*, 481 F.3d at 644). The question of whether nondisclosure under the facts and circumstances was material and thus misleading "is a fact intensive issue" that can be decided as a matter of law only if no reasonable trier of fact could disagree. *See Braden*, 588 F.3d at 599 (concluding that a reasonable trier of fact could find that failure to disclose certain information would mislead a reasonable participant in the process of making investment decisions under the Plan). The Court finds that making such factual determinations is inappropriate on a motion to dismiss.

Finally, Cigna argues that Plaintiffs have not pleaded facts allowing the Court to infer that Cigna knew or should have known that Skyline was not funding the Plan. Doc. 16 at 9. Cigna argues that "Plaintiffs do not allege any facts suggesting that a utilization review vendor such as

16

Cigna, which was not the claims administrator or the Plan administrator, should know whether the employer was funding the Plan or whether it would pay a future claim that they might submit." Doc. 16 at 10. The Court concludes that this lack of detail is not fatal to Plaintiffs' claim. As the Eighth Circuit Court of Appeals has recognized,

> ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences. Thus, while a plaintiff must offer sufficient factual allegations to show that he or she is not merely engaged in a fishing expedition or strike suit, we must also take account of their limited access to crucial information. If plaintiffs cannot state a claim without pleading facts which tend systemically to be in the sole possession of defendants, the remedial scheme of the statute will fail, and the crucial rights secured by ERISA will suffer.

*Braden*, 588 F.3d at 598. Plaintiffs have pleaded that Skyline began failing to pay claims as early as September 2017 and that prior to Mr. Bunker's surgery in December 2017, Skyline stopped funding the plan to cover claims. Doc. 1, ¶¶ 12, 13. The Court concludes that lack of any further detail regarding Cigna's knowledge is not fatal to Plaintiffs' claim at this stage.

Plaintiffs allege that Cigna was acting in a fiduciary capacity when it preauthorized Mr. Bunker's surgery; that Cigna knew or should have known that Skyline was not paying health insurance benefits at that time; that Cigna breached its fiduciary duty in approving Mr. Bunker's surgery while failing to notify Plaintiffs that Skyline was no longer funding the Plan; and that Plaintiffs' relied on the preauthorization and lack of disclosure to their detriment. For now, the Court finds that Plaintiffs have alleged sufficient facts to support an inference that the preauthorization letter and lack of disclosure about the plan funding would "mislead a reasonable [participant] in the process of making an adequately informed decision" about the benefits to which he or she may be entitled. *See Kalda*, 481 F.3d at 644.

### B.     Surcharge

ERISA includes a detailed enforcement scheme allowing certain private parties to bring suit to enforce ERISA's substantive provisions and the terms of an ERISA plan. A "participant or beneficiary" may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan" under ERISA 502(a)(1)(B). 29 U.S.C. § 1132(a)(1)(B). A "participant, beneficiary[,] or fiduciary" may also sue a plan fiduciary for "appropriate relief" on behalf of the

plan under ERISA 502(a)(2), 29 U.S.C. § 1132(a)(2), and ERISA 409, 29 U.S.C. § 1109.  Finally, a "participant, beneficiary, or fiduciary" may sue "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan" or "(B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan" under ERISA 502(a)(3), 29 U.S.C. § 1132(a)(3).

In its opening brief, Cigna argued that Plaintiffs have failed to a state a claim for breach of fiduciary duty because ERISA limits recoveries to remedies that protect the entire plan and do not provide the remedy Plaintiffs seek for their individual injuries.  Doc. 12 at 13-14.  Section 1109(a) imposes personal liability on the fiduciary whose breach of the obligations imposed by the statute results in a loss to the plan, and further subjects the fiduciary to "such other equitable or remedial relief as the court may deem appropriate…."  29 U.S.C. § 1109(a).  Pursuant to section 1132(a)(2), a plan participant or beneficiary (among others) may commence a civil action for appropriate relief under section 1109(a), but he or she may only do so only in a representative capacity on behalf of the plan, not in his or her own behalf.  *See Varity Corp. v. Howe*, 516 U.S. at 515.

In the present case, Plaintiffs have filed suit to recover for the injuries that it alleges Cigna has caused to them rather than to the plan as a whole and will not be permitted to recover under section 1132(a)(2).  However, Plaintiffs may be able to obtain relief under the statue's catch-all provision, section 1132(a)(3).  Section 1132(a)(3) authorizes a plan beneficiary, participant, or fiduciary to bring a civil action:

(A) to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan.

29 U.S.C. § 1132(a)(3).  "As its terms suggest, section 1132(a)(3) does permit a plan participant to seek redress in her own behalf for a breach of fiduciary duty."  *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 482 (7th Cir. 2010) (citing *Steinman v. Hicks*, 352 F.3d 1101, 1102 (7th Cir. 2003)); *see also Silva v. Metropolitan Life Ins. Co.*, 762 F.3d 711, 722 (8th Cir. 2014) ("To obtain relief under the surcharge theory, a plan participant is required to show harm resulting from the plan administrator's breach of a fiduciary duty.").  "However, the language of this section also imposes an important limitation on the type of relief that is available: it allows only injunctive and 'other appropriate equitable relief'; compensatory damages and other forms of legal relief are

beyond the scope of relief authorized."  *Kenseth*, 610 F.3d at 482 (citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993)).

In *CIGNA Corp. v. Amara*, the Supreme Court identified three possible "equitable" theories of recovery under § 1132(a)(3) for an administrator's breach of fiduciary duty: surcharge, reformation, and estoppel.  *Silva*, 762 F.3d at 720 (citing *Amara*, 131 S.Ct. 1866 at 1879-80 (2011)).  In the present case, Plaintiffs seek the remedy of surcharge in the amount of medical bills they incurred in detrimental reliance on what they allege to be a materially misleading precertification letter.  The *Amara* Court described equitable surcharge under § 1132(a)(3) as follows:

> Equity courts possessed the power to provide relief in the form of monetary "compensation" for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment.  Indeed, prior to the merger of law and equity this kind of monetary remedy against a trustee, sometimes called a "surcharge," was "exclusively equitable."
>
> The surcharge remedy extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary.

*Id.* (quoting *Amara*, 131 S.Ct. at 1880).  The First Circuit Court of Appeals defined surcharge as "[t]he imposition of personal liability on a fiduciary for wilful or negligent misconduct in the administration of his fiduciary duties."  *In re Mailman Steam Carpet Cleaning Corp. v. Salem*, 196 F.3d 1, 7 (1st Cir. 1999) (citing Black's Law Dictionary 1441 (6th ed. 1990)); *see also Ellis v. Rycenga Homes, Inc.*, Civ. No. 04-694, 2007 WL 1032367, at *3 (W.D. Mich. 2007) ("[A]lthough the remedy of surcharge may superficially resemble an award of damages at law, it was a creature of equity, governed by equitable principles and awardable only by a chancery court.").  To obtain relief under the surcharge theory, a plan participant is required to show actual harm by a preponderance of evidence resulting from the breach of a fiduciary duty.  *Silva*, 762 F.3d at 722 (citing *Amara*, 131 S.Ct. at 1881-82).

In *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448 (5th Cir. 2013), the plaintiff, a participant in an ERISA plan provided by his employer, brought a claim against the plan administrator for breach of fiduciary duty.  The plaintiff alleged that he took early retirement because he was told orally and in writing by the plan administrator that he had coverage under his employer's medical benefits plan.  *Id.* at 449.  The plaintiff also alleged that he waived medical benefits available under

his wife's retirement plan because of these assurances. *Id.* Several years after he retired, the plan administrator notified the plaintiff that it was discontinuing his medical benefits because it had erred in computing his service time. *Id.*

Although the plaintiff did not expressly plead "surcharge," the Fifth Circuit Court of Appeals found that the plaintiff had alleged surcharge by claiming that he should be whole in the form of compensation for lost benefits. *Id.* at 452. Focusing on the substance of the relief sought, the court concluded that an award of make-whole relief (or "surcharge" relief) fell within the scope of "appropriate equitable relief" for purposes of 502(a)(3). The court concluded that even if *Amara's* discussion of 502(a)(3) was dicta, under its precedent, it was bound to give serious consideration to such a recent and detailed discussion of the law by a majority of the Supreme Court. *Id.* The Court concluded that the plaintiff had stated a plausible claim for relief and that the district court had erred in dismissing his breach of fiduciary duty claim. *Id.*

In *Stiso v. Int'l Steel* Group, a beneficiary of a long-term disability insurance plan provided by his employer, brought a breach of fiduciary duty claim against his employer and Metlife, who was responsible for deciding eligibility and paying benefits. 604 Fed.Appx. 494, 59 Employee Benefits Cas. 2133 (6th Cir. 2015). The plaintiff had become disabled and was unable to work. *Id.* at 496-97. He requested a 7% annual increase in his monthly benefits based on the language in the plan and the summary plan description. *Id.* at 497. On appeal, the court held that MetLife was an ERISA fiduciary because it exercised control over the denial or payment of benefits under the plan. *Id.* at 500. The court concluded that the district court erred in granting summary judgment for Metlife, concluding that Metlife's interpretation of the plan documents and its denial of relief based on those documents was a breach of its fiduciary duty to discharge its duties in the interest of the participants and beneficiaries for the purpose of providing benefits. *Id.* The court stated that on remand, the plaintiff may seek the "make-whole relief in the form of money damages." *Id.*

Cigna argues that it may not be held liable for surcharge because it is not a fiduciary. Doc. 16 at 10. As the Court has already explained, the question of whether or not Cigna was acting in its capacity as a fiduciary will require the Court to make factual determinations that are inappropriate to make on a motion to dismiss.

For the foregoing reasons, Cigna's motion to dismiss Plaintiffs' claim for breach of fiduciary duty is denied.

## II.    Motion to Strike Jury Demand

Cigna argues that because claims under ERISA are equitable in nature, there is no right to a jury trial in a suit for benefits under ERISA and requests that Plaintiffs' demand for jury trial be stricken.  Doc. 12 at 14 (citing *Langlie v. Onan Corp.*, 192 F.3d 1137 (8th Cir. 1999); *Houghton v. SIPCO, Inc.*, 38 F.3d 953, 957 (8th Cir. 1994); *In re Vorpahl*, 695 F.2d 318, 321-22 (8th Cir. 1982)).

Plaintiffs acknowledge that ERISA "claims are equitable and thus not typically amenable to a jury trial," but is asking the Court not to strike the jury demand because they are only seeking a jury trial on triable issues.  Doc. 15 at 13.

Federal courts, including the Eighth Circuit Court of Appeals, have noted the complete absence in the ERISA statute of any mention of the right to trial by jury.  *See Berry v. Ciba-Geigy*, 761 F.2d 1003, 1007 (4th Cir. 1985); *In re Vorpahl*, 695 F.2d 318, 321 (8th Cir. 1982); *Lamberty v. Premier Millwork & Lumber Co.*, 329 F.Supp.2d 737, 744 (E.D. Va. 2004) (stating that ERISA 'does not statutorily provide for trial by jury, either expressly or implicitly.").  Where, as with ERISA, a statute is silent as to the availability of a jury, a party may nevertheless demand one if the action would vindicate inherently legal, as opposed to equitable, rights.  *Perez v. Silva*, 185 F.Supp.3d 698, 700-01 (D. Md. 2016) (citing U.S. Const. amend. VII ("In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved. . . ."); Fed. R. Civ. P. 38(a) ("The right of trial by jury as declared by the Seventh Amendment . . . is preserved to the parties inviolate."); *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989).

Consequently, any right to jury trial in this case must arise from the Seventh Amendment.  The Seventh Amendment preserves the right to a jury trial only in "suits at common law."  U.S. Const. amend. VII.  The phrase "suits at common law" refers to "suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized and equitable remedies were administered."  *Granfinaciera*, 492 U.S. at 41.  In deciding whether a particular action is a suit at common law that entitles a litigant to a trial by jury,

the court must first determine whether the action would have been deemed legal or equitable in 18th century England prior to the merger of law and equity.  *Id.* at 42.  Second, the court must examine the remedy sought and whether it is legal or equitable in nature.  *Id.*  The court must give greater weight to the latter factor.  *Id.*

In *Mertens v. Hewitt Associates*, the Supreme Court recognized that "at common law, the courts of equity had exclusive jurisdiction over virtually all actions by beneficiaries for breach of trust."  508 U.S. 248, 256 (1993).  More recently, the Court observed that a "suit by a beneficiary against a plan fiduciary (whom ERISA typically treats as a trustee) about the terms of the plan (which ERISA typically treats as a trust)[,]" is the kind of suit that, before the merger of law and equity, "could have [been] brought only in a court of equity, not a court of law."  *Amara*, 563 U.S. at 439.  In light of this authority, the Court concludes, as other courts have done, that breach of fiduciary duty claims are inherently equitable.  *See Moitoso v. FMR LLC*, 410 F.Supp.3d 320, 324-25 (D. Mass. 2019); *Perez v. Silva*, 185 F.Supp.3d 698, 702 (D. Md. 2016); *Demastes v. Midwest Diversified Mgmt. Corp.*, Civ. No. 19-065, 2020 WL 1490741, at *4-5 (W.D.N.C. Mar. 24, 2020); *Ellis v. Rycenga Homes, Inc.*, Civ. No. 04-0694, 2007 WL 1032367, at *2 (W.D. Mich. Apr. 2, 2007).

Even more important is the fact that the trust remedy of "surcharge" has been considered an inherently equitable remedy.  *Perez*, 185 F.Supp.3d at 703 (citing Restatement (Third) of Trusts § 95, cmt. B. ("If a breach of trust causes a loss . . . the beneficiaries are entitled to restitution and may have the trustee surcharged for the amount necessary to compensate fully for the consequences of the breach.").  The Supreme Court in *Amara* acknowledged that courts of equity "possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment," and that "prior to the merger of law and equity this kind of monetary remedy against the trustee, sometimes called a 'surcharge,' was 'exclusively equitable.'"  563 U.S. at 441-42; *Moitoso*, 410 F.Supp.3d at 327; *Phelps v. C.T. Enters., Inc.*, 394 F.3d 213, 222 (4th Cir. 2005) (holding that plaintiff was not entitled to a jury trial on her claim under section 1132(a)(3), providing as it does, for only equitable remedies); *Cherepinsky v. Sears Roebuck & Co.*, 455 F.Supp.2d 470, 476 (D.S.C. 2006) (granting defendants' motion to strike plaintiff's jury demand on her claim under section 1132(a)(3)).

It even appears that claims under 502(a)(3) may be foreclosed under the Eighth Circuit's decision in *In re Vorphal*, 695 F.2d at 322.  While the opinion does not specifically reference section 502(a)(3), the Court held that "we conclude that petitioners' claim for present and future benefits under the [ERISA plan] *and for other equitable relief* should properly be tried to the court and that the action of the district court in striking the demand for jury trial should be allowed to stand."  *Id.* (emphasis added).

The Court acknowledges that should this case proceed to trial, determinations will be need to be made by the trier of fact as to whether Cigna's preauthorization letter and failure to disclose plan funding materially misled Plaintiffs as to their benefits.  Because Plaintiffs are pursuing an entirely equitable claim and relief, those determinations will be made by the Court in a court trial.  Plaintiffs' motion to strike jury demand is thus granted.

## III.   Motion for Service by Publication

### A.   Facts

Pending before the Court is Plaintiffs' motion to serve Skyline Healthcare LLC by publication.  Doc. 21.  In an affidavit, Plaintiffs aver that upon information and belief, Skyline Health Care is domiciled in New Jersey and owns Arlington Care.  Doc. 22, ¶ 4.  On or about February 12, 2019, Arlington Care was administratively dissolved by the South Dakota Secretary of State.  Doc. 22, ¶ 5.  Thomas L. Johnson of Boyce Law Firm, L.L.P. was appointed as an Agent for Service of Process for Arlington Care and Rehabilitation Center, LLC.  Doc. 22, ¶ 6.  Plaintiffs aver that upon information and belief, Joseph Schwartz is an owner/member of Skyline and that in 2018, Black Hills Receiver, LLC took over management of several nursing homes owned by Skyline.  Doc. 22, ¶¶ 7-8.

Plaintiffs aver that on or about August 14 and August 19, 2019, Deputy Sheriff J. Lans attempted to serve process upon Joseph Schwartz at 1859 54th Street, Unit D, Brooklyn, NY 11204, and made numerous attempts without success.  Doc. 22, ¶ 9, Ex. C.  One attempt made by Deputy Sheriff Lans resulted in a female occupant of the home stating through an open window that "the respondent wasn't home," and refused to open the door or give her name.  Doc. 22, ¶ 10.  Deputies left a card on the front door.  Doc. 22, ¶ 10.

Counsel for Plaintiffs was provided another potential address for Joseph Schwartz in Spring Valley, New York, where he had been served in other litigation. Doc. 22, ¶ 11, Ex. D. Deputy Sheriff Sean Russo attempted service at this address six separate times between 12/27/2019 and 1/13/2020. Doc. 22, ¶ 12, Ex. D. Deputy Sheriff Sean Russo stated in his affidavit that "Deputy attempted and returned. Sent contact letter to Defendant on 1/2/2020 at 4:30 p.m. Employee at given building claims Defendant is rarely at locations. Summons returned. Defendant avoiding service." Doc. 22, ¶ 13, Ex. D.

### B. Discussion

Rule 4 of the Federal Rules of Civil Procedure governs service of process in federal actions. Fed. R. Civ. P. 4. Limited liability companies must be served, absent a waiver, either "in the manner prescribed by Rule 4(e)(1) for serving an individual; or. . . .by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process. . . ." Fed. R. Civ. P. 4(h)(1). Rule 4(e)(1) provides that service may be affected by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1).

Under South Dakota law, "[s]ervice by publication is not available in all civil cases but may be used in the actions and circumstances specifically described in SDCL 15-9-8 to 15-9-15, inclusive." *Openhowski v. Mahone*, 612 N.W.2d 579, 583 (S.D. 2000); *United Nat'l Bank v. Searles*, 331 N.W.2d 288, 291 (S.D. 1983) (voiding default judgment because appellant did not fit within any of the categories for constructive service of process or the provisions of SDCL 15-9-8 to 15-9-15); *Searles*, 331 N.W.2d at 293 (Fosheim, J. & Wollman, J. concurring) ("As a condition precedent to a valid order for service by publication there must be a proper showing and the court must find that all reasonable means (due diligence) have been used to find the whereabouts of defendant *and* that the action comes under one of the provisions of SDCL 15-9-8 to -21.). This action comes under none of the provisions of SDCL 15-9-8 to -21. Here, Plaintiffs seek to serve defendant Skyline Healthcare, LLC via publication pursuant to SDCL 15-9-12 which allows parties to serve via publication where a foreign corporation owns property within the jurisdiction:

> The court or judge thereof may grant an order pursuant to 15-9-7 where the defendant is a foreign corporation and the cause of action arose in this state, or where such defendant has property within this state and the court has jurisdiction

over the subject of the action, and where by attachment, garnishment, or other process, the plaintiff has brought such property under jurisdiction of the court.

SDCL 15-9-12.[4]  Plaintiffs aver that in 2018 Black Hills Receiver, LLC took over management of several nursing homes owned by Skyline.  Doc. 22, ¶ 8.

The South Dakota Supreme Court noted that the statutes referenced in SDCL 15-9-7 "permit service by publication in actions in rem, quasi in rem, and certain domestic relations actions.  Service by publication is also allowed in an action in personam, but only when a resident defendant has left the state to defraud creditors or avoid process."  *Searles*, 331 N.W.2d at 293 (Fosheim, J. & Wollman, J. concurring) ("[E]xcept for SDCL 15-9-13, service by publication does not apply to in personam actions.").  Even if the Skyline owns property within the state of South Dakota, it does not appear that the SDCL 15-9-12 would be applicable to this case if it is determined that the cause of action did not arise in this state because the property has not been brought under jurisdiction of *this* court "by attachment, garnishment, or other process."

Regardless, "before service by publication . . . may be ordered, the party instituting the litigation must exhaust all reasonable means available in an effort to locate interested parties to the litigation."  *In re D.F.*, 727 N.W.2d 481, 484 (S.D. 2007).  "Ultimately, '[t]he test of the sufficiency of the showing of due diligence is not whether all possible or conceivable means of discovery are used, but rather it must be shown that all reasonable means have been exhausted in an effort to located interested parties.'"  *Id.* (citation omitted).  Therefore:

---

[4] In *Mullane v. Central Hanover Bank & Trust Co.*, the Supreme Court explained the rationale for allowing constructive service where the cause of action involves an attack on property belonging to a defendant located in the state in which publication is made:

> It is true that publication traditionally has been acceptable as notification supplemental to other action which in itself may reasonably be expected to convey a warning.  The ways or an owner with tangible property are such that he usually arranges means to learn of any direct attack upon his possessory or property rights.  Hence, libel of a ship, attachment of a chattel or entry upon real estate in the name of the law may reasonably be expected to come promptly to the owner's attention.  When the state within which the owner has located such property seizes it for some reason, publication or posting affords an additional measure of notification.  A state may indulge the assumption that one who has left tangible property in the state either has abandoned it, in which case proceedings against it deprive him of nothing, or that he has left some caretaker under a duty to let him know that it is being jeopardized.

339 U.S. 306, 316 (1950) (citation omitted).

> A diligent search is measured not by the quantity of the search but the quality of the search. In determining whether a search is diligent, we look at the attempts made to locate the missing person or entity to see if attempts are made through channels expected to render the missing identity. While a reasonable search does not require the use of all possible or conceivable means of discovery, it is an inquiry that a reasonable person would make, and it must extend to places where information is likely to be obtained and to persons who, in the ordinary course of events, would be likely to have information of the person or entity sought.

*Id.* at 484 (quoting *In re S.P.*, 672 N.W.2d 842, 846 (Iowa 2003)). "Whether a party has exhausted all reasonable means available for locating interested parties must be determined by the circumstances of each particular case." *Id.* (citation omitted).

The Court is not satisfied at this juncture that Plaintiffs have exhausted all reasonable means in an effort to locate interested parties. Plaintiffs have failed to demonstrate to the Court that they have looked at the filings for the Secretary of State of the State of New Jersey to confirm whether Joseph Schwartz is an owner, managing member of Skyline and/or, whether there are other owners/managing members or a registered agent listed for Skyline. Plaintiff solely avers that upon information and belief, Joseph Schwartz is an owner/member of Skyline Healthcare, LLC and that Skyline purportedly owns several properties in South Dakota that are in receivership.

It is unclear whether Plaintiffs intend to serve by publication in South Dakota or New Jersey. While the Supreme Court has acknowledged that constructive [service] for in personam actions "is not a per se violation of due process under the Fourteenth Amendment," whether or not constructive service comports with procedural due process requirements depends on "whether or not the service of process was reasonably calculated under the circumstances to apprise interested parties of the pendency of an action against them." *Searles*, 331 N.W.2d at 290 (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)). Plaintiffs have provided no evidence demonstrating that Skyline owns property in South Dakota. The addresses where Plaintiffs have attempted service of Joseph Schwartz, the purported owner of Skyline, are all in New Jersey. The Court has concerns that service of publication in South Dakota would fail to apprise Skyline of the pendency of the action.

The United States Supreme Court has acknowledged that publication by service is an inherently unreliable means of apprising parties of the pendency of an action. *Mullane*, 339 U.S. at 315 ("It would be idle to pretend that publication alone as prescribed here, is a reliable means of acquainting interest parties of the fact that their rights are before the courts. . . . In weighing its

sufficiency on the basis of equivalence with actual notice we are unable to regard this as more than a feint.").  As noted above, limited liability companies may be served in the manner prescribed by Rule 4(e)(1) for serving an individual.  Rule 4(e)(1) provides that service may be affected not only by following state law for serving a summons in an action brought in the court of general jurisdiction in the state where the district court is located, in this case South Dakota, but may also be brought following state law for serving a summons where service is to be made, which in this case is New Jersey—the state in which Skyline is purportedly domiciled.  Accordingly, the Court finds that substitute service may be affected upon Skyline under New Jersey law by serving process upon the New Jersey filing office.  Specifically, N.J.S. 42:2C-17 (effective Sept. 19, 2012) provides that:

> b. If a limited liability company or foreign limited liability company does not appoint or maintain an agent for service of process in this State or the agent for service of process cannot with reasonable diligence be found at the agent's street address, the filing office is an agent of the company upon whom process, notice, or demand may be served.

> c.  Service of any process, notice or demand on the filing office as agent for a limited liability company or foreign limited liability company may be made by delivering to the filing office duplicate copies of the process, notice, or demand.  If a process, notice, or demand is served on the filing office, the filing office shall forward one of the copies by mail or otherwise provide or deliver a copy to the registered office of the company or the principal office of the company if the mailing address of the principal office appears in the records of the filing office and is different from the mailing address of the registered office.

> d.  Service is effected under subsection c. of this section at the earliest of:
> (1) the date the limited liability company or foreign limited liability company received the process, notice, or demand;
> (2) the date shown on the return receipt, if signed on behalf of the company; or
> (3) five days after the process, notice, or demand is deposited with the United States Postal Service, if correctly addressed and with sufficient postage.

While substitute service upon Skyline pursuant to N.J.S. 42:2C-17 may be available, Plaintiffs have not at this point demonstrated that the agent for service of process cannot with reasonable diligence be found at the agent's street address.  As detailed in the filings made with the South Dakota Secretary of State for Arlington Care, the principal address of Skyline, the purported owner of Arlington Care, is a Wood Ridge, New Jersey, address which differs from the addresses upon which Plaintiffs attempted service.  Docs. 22-1, 22-3; 22-4.

For the foregoing reasons, Plaintiffs' Motion to Serve by Publication is denied without prejudice to its refiling.

The Court notes that more than 90 days have passed since the filing of the Complaint.[5] Rule 4(m) of the Federal Rules of Civil Procedure provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). Rule 4(m) further provides that "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." The Court finds that good cause exists for Plaintiffs' failure to effect service upon Skyline. Plaintiffs have made diligent efforts to serve the purported owner of Skyline at two separate locations without avail. It appears from the affidavits filed by the Sheriff deputy process servers that the purported owner is rarely at these locations. The Court grants Plaintiffs an additional 90 days from the date of this order to affect service upon defendant Skyline Healthcare, LLC. If Plaintiffs are unable to affect service in that time, they may file for consideration with the Court a motion to extend time for service.

Accordingly, it is hereby ORDERED:

1. Cigna's Motion to Dismiss, Doc. 11, is DENIED;

2. Cigna's Motion to Strike Jury Demand, Doc. 11, is GRANTED; and

3. Plaintiffs' Motion to Serve Skyline Healthcare, LLC by publication is DENIED WITHOUT PREJUDICE.

Dated this 24th day of June, 2020.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK

---

[5] The Complaint was filed on July 22, 2019. Doc. 1.

28